Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Hilary Potashner (SBN 167060)
*hpotashner@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
S. Gregory Herrman (*Pro Hac Vice*)
*gherrman@larsonllp.com*
Karen E. Huber (*Pro Hac Vice*)
*khuber@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:   (213) 436-4888
Facsimile:    (213) 623-2000

Attorneys for Defendant ExThera Medical
Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| KIM HUDLOW; ESTATE OF DAVID HUDLOW; JAIME BASKIN; BRIAN WITHEY; STACEY BOWEN; ESTATE OF JOHN BOWEN; VANESSA CHUPP; ESTATE OF KYLE CHUPP; CARLA VASS-SALGADO; RICARDO SALGADO; RON PERI; and INGRID PERI, <br><br> Plaintiffs, <br><br> vs. <br><br> EXTHERA MEDICAL CORPORATION; QUADRANT MANAGEMENT LLC; QUADRANT CLINICAL CARE LLC; ALAN QUASHA; DEVON QUASHA; and JOHN PRESTON, <br><br> Defendants. | Case No. 3:25-cv-02492-MMC <br><br> Judge:    Judge Maxine M. Chesney <br><br> **DEFENDANT EXTHERA MEDICAL CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Complaint Filed:  March 12, 2025 <br><br> *[Filed concurrently with [Proposed] Order]* <br><br> Date: June 20, 2025 <br> Time: 9:00 a.m. <br> Location: Courtroom 7 <br> 450 Golden Gate Avenue <br> San Francisco, CA 94102 |

LARSON
LOS ANGELES

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................................................1

II.   LEGAL STANDARD .........................................................................................4

    A.    Rules 12(b)(6) and 9(b) ............................................................................4

    B.    Choice of Law ...........................................................................................5

III.  ARGUMENT ......................................................................................................5

    A.    The Complaint Fails to Plead Conspiracy ................................................5

        1.    The Complaint fails to allege any agreement to do an unlawful act .............6

        2.    A conspiracy cannot be inferred from the Complaint ...................................7

    B.    The Complaint Fails to Plead Fraud at least as to ExThera (Claim 1) ....................10

        1.    Without a conspiracy, ExThera cannot be liable for statements made by other Defendants ........................................10

        2.    ExThera cannot be held liable for statements made by a former board member........................................11

        3.    The Complaint fails to particularly plead fraud as to any Defendant ..........11

        4.    The Complaint fails to sufficiently plead ExThera's knowledge of falsity ........................................13

        5.    The fraud claim contradicts other allegations in the Complaint .................13

    C.    The Complaint Fails to Plead Negligence and NIED at least as to ExThera (Claims 2 and 4) ........................................15

        1.    The Complaint fails to sufficiently plead negligence (Claim 2) .................15

        2.    The Complaint fails to sufficiently plead NIED at to ExThera (Claim 4) ........................................17

    D.    The Complaint Fails to Plead IIED at least as to ExThera (Claim 3) ....................19

    E.    The Complaint Fails to Plead Battery as to ExThera (Claim 5)...........................21

    F.    The Complaint Fails to Plead Product Liability (Failure to Warn) (Claim 6) .........22

    G.    The Complaint Fails to Plead Wrongful Death as to ExThera (Claim 7) ...............23

    H.    The Complaint Fails To Plead a Basis For Attorney's Fees ....................................24

IV.   CONCLUSION ..................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*A.C. v. Griego,*
   No. 2:16-cv-00746-JAM-CKD, 2016 WL 5930592 (E.D. Cal. Oct. 12, 2016) ..................... 24

5

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................ 4, 17

7

*Bartel v. Tokyo Electric Power Company, Inc.,*
   371 F.Supp.3d 769 (S.D. Cal. 2019) .............................................................................. 5

8

9

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n,*
   620 F.2d 1360 (9th Cir. 1980) ...................................................................................... 11

10

11

*Boessenecker v. JPMorgan Chase Bank,*
   No. 13–0491 C MMC, 2014 WL 107063 (N.D. Cal. Jan. 10, 2014) .............................. 15, 17

12

*Cimoli v. Alacer Corp.,*
   587 F. Supp. 3d 978 (N.D. Cal. 2022) ........................................................................... 5

13

14

*Cisco Sys., Inc. v. STMicroelecs., Inc.,*
   77 F.Supp.3d 887 (N.D. Cal. 2014) ............................................................................ 5, 6

15

16

*Cisco Sys., Inc. v. STMicroelectronics, Inc.,*
   No. C-14-03236-RMW, 2015 WL 3488923 (N.D. Cal. June 2, 2015) ............................... 5

17

*Colgate v. JUUL Labs, Inc.,*
   402 F. Supp. 3d 728 (N.D. Cal. 2019) .......................................................................... 22

18

19

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir. 1997) ...................................................................................... 4, 5

20

21

*Copeland v. County of Alameda,*
   No. 12–cv–04286–JST, 2014 WL 1266198 (N.D. Cal. Mar. 21, 2014) ........................ 17, 20

22

*Duste v. Chevron Prods. Co.,*
   738 F. Supp. 2d 1027 (N.D. Cal. 2010) ........................................................................ 15

23

24

*Epstein v. Washington Energy Co.,*
   83 F.3d 1136 (9th Cir. 1996) ........................................................................................ 4

25

26

*Est. of Vela v. Cnty. of Monterey,*
   No. 16-CV-02375-BLF, 2018 WL 4076317 (N.D. Cal. Aug. 27, 2018) ........................ 23, 24

27

*Garcia v. City of Merced,*
   637 F. Supp. 2d 731 (E.D. Cal. 2008) .......................................................................... 21

28

*Gutzalenko v. City of Richmond*,
   723 F. Supp. 3d 748 (N.D. Cal. 2024) ................................................................. 21

*Hall v. City of Walnut Creek*,
   No. C 19-05716 WHA, 2020 WL 408989 (N.D. Cal. Jan. 24, 2020) ..................................... 24

*Harrell v. California State Univ.*,
   745 F. Supp. 3d 922 (N.D. Cal. 2024) ................................................................. 20

*Estate of Hatfield v. County of Lake*,
   No. C 11-2396 PJH, 2012 WL 1949327 (N.D. Cal. May 29, 2012) ...................................... 24

*Hawkins v. Shimano N. Am. Bicycle, Inc.*,
   729 F. Supp. 3d 989 (C.D. Cal. 2024) ................................................................. 20

*Herrera v. Los Angeles Unified School District*,
   No. SACV 17-00069 JVS (KESx), 2019 WL 1581413 (C.D. Cal. Feb. 13,
   2019) ............................................................................................ 24

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
   No. CV07-00043MMMSSX, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007),
   *aff'd*, 323 F. App'x 571 (9th Cir. 2009) ................................................................. 3

*Lachapelle v. Kim*,
   No. 15-CV-02195-JSC, 2015 WL 5461542 (N.D. Cal. Sept. 16, 2015) ................... 6, 7, 9, 10

*Martin v. Cal. Dep't of Veterans Affairs*,
   560 F.3d 1042 (9th Cir.2009) .................................................................... 17, 20

*Martinez v. Allstar Financial Servs., Inc.*,
   No. CV 14–04661 MMM, 2014 WL 12597333 (C.D. Cal. Oct. 9, 2014) ................................ 8

*McKenna v. Permanente Med. Grp., Inc.*,
   894 F. Supp. 2d 1258 (E.D. Cal. 2012) ............................................................ 15, 18

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ......................................................................... 13

*Moss v. U.S. Secret. Serv.*,
   572 F.3d 962 (9th Cir. 2009) .......................................................................... 4

*Ochoa v. City of Hayward*,
   No. C-14-02385 DMR, 2014 WL 4088203 (N.D. Cal. Aug. 19, 2014) ................................ 22

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) .................... 13

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048 (N.D. Cal. 2004) ................................................................. 25

*Puri v. Khalsa,*
    674 F. App'x 679 (9th Cir. 2017).................................................................. 12, 13

*Snyder v. Stanislaus Cnty.,*
    No. 1:19-cv-00679-DAD-EPG, 2021 WL 2210729 (E.D. Cal. June 1, 2021) ............. 8, 15, 18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
    996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................................. 17

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ............................................................................ 4

*Steshenko v. Albee,*
    70 F. Supp. 3d 1002 (N.D. Cal. 2014) ........................................................... 19, 20

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007)............................................................. 8, 9, 11, 13

*In re Taco Bell Wage & Hour Actions,*
    222 F. Supp. 3d 813 (E.D. Cal. 2016) ........................................................... 24, 25

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)........................................................... 5, 10, 12

*Western Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981)............................................................................. 4

*Zetz v. Bos. Sci. Corp.,*
    398 F. Supp. 3d 700 (E.D. Cal. 2019) ............................................................... 22

*Zion v. County of Orange,*
    No. SACV 14-1134 JVS (RNBx), 2014 WL 12798107
    (C.D. Cal. Nov. 17, 2014) ................................................................................ 24

**California Cases**

*Bartley v. California Ass'n of Realtors,*
    115 Cal.App.3d 930 (1980)................................................................................ 7

*Bromme v. Pavitt,*
    5 Cal.App.4th 1487 (1992) .............................................................................. 23

*Burchell v. Faculty Physicians & Surgeons of Loma Linda Univ. Sch. of Med.,*
    54 Cal.App.5th 515 (2020)............................................................................... 21

*Jamison v. Lindsay,*
    108 Cal. App. 3d 223 (1980) ........................................................................... 16

*Kidron v. Movie Acquisition Corp.,*
    40 Cal.App.4th 1571 (1995).............................................................................. 7

*Nat'l Football League v. Fireman's Fund Ins. Co.*,
    216 Cal. App. 4th 902 (2013) ................................................................................ 5

*Wilcox v. Superior Ct.*,
    27 Cal.App.4th 809 (1994) ............................................................................... 7, 9

*Wong v. Tai Jing*,
    189 Cal.App.4th 1354 (2010) ............................................................................ 17

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014) ........................................................................... 20

**Other State Cases**

*Arnold v. Society for Sav. Bancorp, Inc.*,
    678 A.2d 533 (Del. 1996) ................................................................................. 11

**Other Authorities**

*Restatement (Second) Agency*, § 14C (1958) ............................................................ 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON
LOS ANGELES

DEFENDANT EXTHERA'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on June 20, 2025 at 9:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 7 of the above entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Maxine M. Chesney, Defendant ExThera Medical Corporation ("ExThera") will move to dismiss the Complaint in its entirety.

ExThera's motion is made pursuant to Rules 12(b)(6), 12(f), and 9(b) of the Federal Rules of Civil Procedure. This motion is based upon this Notice, the attached Memorandum of Points and Authorities, all papers and pleadings in this action, oral argument, and any other matters properly before the Court. ExThera requests the Court dismiss the Complaint in its entirety without leave to amend.

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))

1. Should the Complaint's conspiracy allegations be dismissed?

2. Should the Complaint's claims for fraud, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, product liability (failure to warn), and wrongful death be dismissed?

3. Should the Complaint's request for attorneys' fees be struck under Rule 12(f)?

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**[1]

ExThera was co-founded in 2007 by Robert Ward, a renowned biomaterials engineer who was instrumental in developing more than fifty critical medical device technologies, including artificial hearts, spinal implants, and continuous glucose sensors. Mr. Ward was also co-creator of the Johnson & Johnson extended wear contact lenses. Mr. Ward co-founded ExThera to develop and introduce medical devices that remove a broad range of harmful pathogens from the bloodstream of patients.

Specifically, Mr. Ward is the inventor of ExThera's Seraph 100 blood filter ("Seraph 100") which removes pathogens from the blood using tiny beads covered in heparin to mimic processes

---

[1] All internal citations and quotations are omitted and emphasis is added, unless stated otherwise.

that occur naturally within the human body. The Seraph 100 proved effective at least as early as 2011, when ExThera published the results of a study showing the Seraph 100 removed MRSA from the blood. Based on these results, the Seraph 100 was selected by the U.S. Defense Advanced Research Projects Agency ("DARPA") to participate in one of its programs. But the success of the Seraph 100 did not stop there. In 2020, ExThera's Seraph 100 was the only treatment given emergency use authorization by the FDA to treat severe COVID-19, and was featured in a *60 Minutes* episode discussing the positive results of this emergency use. The Seraph 100 has also been successfully used and approved for trials around the world, including France, Italy, UK, Netherlands, Germany, Spain, Antigua, and others. In 2019, the Seraph 100 received a Medical Devices Directive CE Mark in the European Union and is indicated for pathogen reduction in the treatment of blood stream infections. ExThera has also partnered with some of the most prestigious hospitals in the country to use its Seraph 100 filter, including the Mayo Clinic, Cleveland Clinic, Walter Reed National Military Medical Center, and UCLA Health.

ExThera's testing of the Seraph 100 to extract circulating tumor cells ("CTCs") from the blood, in a procedure call ONCObind, has been encouraging. From 2021 to 2024, at least three different clinical trials confirmed the efficacy of using the Seraph 100 for filtering out CTCs. In 2024 and 2025, studies at the University of Oklahoma and Cedars Sinai Medical Center confirmed the same. And physicians at prominent medical research centers and hospitals have praised the impact of ExThera's Seraph 100.

Having heard the positive results associated with the Seraph 100 from John Preston, in 2023, Alan Quasha approached ExThera about entering into a distribution agreement, in which ExThera would supply the Seraph 100 filters to Quasha's company, Quadrant Clinical Care LLC ("QCC"), for use in treating patients in Antigua. Specifically, under the terms of the distribution agreement, QCC had approval to use the Seraph 100 filters for removing pathogens from the blood of patients that QCC was treating. ExThera was interested, and had reason to trust that QCC would be a reliable and responsible distributor and user of its Seraph 100 filters. Mr. Quasha was an established healthcare investor with several prior successful medical device investments, his daughter Dr. Devon Quasha was a Harvard-trained doctor, and QCC's doctor in Antigua, Dr. Joseph John, had

three decades of experience and was a U.S.-trained physician who graduated from Columbia Medical School.

ExThera never had any reason to believe that there were problems resulting from QCC's use of its filter in treating patients in Antigua. All of the reports that ExThera received from QCC, including before and after patient photos and videos, showed at least some improvement for QCC's patients. QCC never reported any adverse events associated with the Seraph 100 with any of the patients. This was consistent with other studies that also reported no adverse effects that resulted from the use of the Seraph 100.[2] Yet, notwithstanding, Plaintiffs Kim Hudlow, Estate Of David Hudlow, Jaime Baskin, Brian Withey, Stacey Bowen, Estate Of John Bowen, Vanessa Chupp, Estate Of Kyle Chupp, Carla Vass-Salgado, Ricardo Salgado, Ron Peri, and Ingrid Peri, (collectively, "Plaintiffs") have filed a Complaint against ExThera and the other Defendants (Quadrant Management LLC, QCC, Mr. Quasha, Devon Quasha, and John Preston), related to care that they received from QCC in Antigua. Plaintiffs allege that Defendants misled Plaintiffs about the effectiveness of the Seraph 100 to lure them to a substandard clinic in Antigua. Plaintiffs contend that "[t]his is a case about a promised medical miracle—a cure for metastatic cancer" (Dkt. 1 (Complaint), ¶ 1), and that Defendants committed fraud by making such promises, but do not point to any specific instance where any Defendant guaranteed a "miracle" or "cure."

In fact, as discussed in more detail below, Plaintiffs' allegations as to ExThera are general, vague, and unsupported by specific factual allegations. Plaintiffs allege seven causes of action against ExThera and the other Defendants: (1) fraud, (2) negligence, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) battery, (6) product liability (failure to warn) and (7) wrongful death. Plaintiffs allege that ExThera is responsible for the acts of all Defendants based on a purported conspiracy. But Plaintiffs never identify in the Complaint what ExThera and the other Defendants agreed to do, let alone what bad act they conspired to commit

---

[2] In fact, Plaintiffs' Complaint admits that in a Croatian study involving ExThera's Seraph 100, "[n]o patient experienced treatment related adverse effects," and "confirmed [the Seraph 100's] CTC binding ability." Dkt. 1, ¶33, n. 9 (citing URL to published results from Croatian study). *See Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV07-00043MMMSSX, 2007 WL 4976364, at *12 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323 F. App'x 571 (9th Cir. 2009) ("Website content is 'documentary' for the purposes of the incorporation by reference doctrine.").

1   together. Plaintiffs do not allege sufficient facts which could even be construed to imply a

2   conspiracy. Moreover, the Complaint should be dismissed because Plaintiffs fail to plead their fraud

3   claim with the particularity required by Rule 9(b) and otherwise fail to state any facts to support a

4   legal claim against ExThera as to the other causes of action. Accordingly, for the reasons stated

5   herein, the Court should dismiss the Complaint in its entirety and without leave to amend.

6   **II.    LEGAL STANDARD**

7   ### A.      Rules 12(b)(6) and 9(b)

8          The Court must grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

9   Procedure where, as here, the complaint fails to state a claim for relief "that is plausible on its face."

10  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, the complaint must plead "non-

11  conclusory 'factual content' that, along with 'reasonable inferences' from that content, 'plausibly

12  suggest[s]'" a claim for relief. *Moss v. U.S. Secret. Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). While

13  the Court must accept facts alleged in a complaint, it does not accept legal conclusions. *Western*

14  *Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Epstein v. Washington Energy Co.,* 83

15  F.3d 1136, 1140 (9th Cir. 1996). In other words, plausibility requires "more than a sheer possibility

16  that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 687. Therefore, a complaint that does not

17  "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party

18  to defend itself effectively" must be dismissed. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

19         In addition, because all claims turn on allegations of fraud, the Complaint must also meet

20  the heightened pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or

21  mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.

22  R. Civ. Pr. 9(b). This requirement is met only if the complaint "identifies the circumstances of the

23  alleged fraud so that defendants can prepare an adequate answer." *Cooper v. Pickett*, 137 F.3d 616,

24  627 (9th Cir. 1997). Specifically, "[t]o satisfy Rule 9(b):

25           a plaintiff must set forth *more* than the neutral facts necessary to identify
             the transaction. The plaintiff must set forth what is false or misleading about
26           a statement, and why it is false. In other words, the plaintiff must set forth
             an explanation as to why the statement or omission complained of was false
27           or misleading.

28

4                                                    Case No. 3:25-cv-02492-MMC
DEFENDANT EXTHERA'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

*Id.* at 625 (emphasis original). Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

### B.    Choice of Law

The Complaint alleges conduct that allegedly occurred in multiple jurisdictions (e.g., Antigua, California, Florida, Canada, and others). Federal courts sitting in diversity apply the forum state's choice of law rules, and thus, California's choice of law rules will determine which jurisdiction's substantive law applies to the claims in the Complaint. *Bartel v. Tokyo Electric Power Company, Inc.*, 371 F.Supp.3d 769, 789 (S.D. Cal. 2019). California courts use a three-part test to determine which law applies: (1) is there is any difference between the substantive laws of the potential jurisdictions? (2) if so, is there a true conflict based on each potential jurisdiction's interest in having its law applied? and (3) which jurisdiction's interest would be most impaired if its law were not applied? *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 989 (N.D. Cal. 2022). Because California grants nonresident plaintiffs' choice of forum "due deference under the circumstances presented," absent other considerations not found in the Complaint, non-resident Plaintiffs' choice of forum favors California for the substantive law. *Nat'l Football League v. Fireman's Fund Ins. Co.*, 216 Cal. App. 4th 902, 929 (2013). Accordingly, for purposes of this motion to dismiss, ExThera applies California substantive law to each cause of action.

## III.    ARGUMENT

### A.    The Complaint Fails to Plead Conspiracy

At paragraphs 230 to 234, the Complaint alleges that ExThera and the other Defendants "engaged in a civil conspiracy and are liable for any of the torts committed by other Defendants." Dkt. 1, ¶ 230. To sufficiently allege civil conspiracy under California law, Plaintiffs must allege "(1) the formation and operation of the conspiracy and (2) damage resulting to plaintiff from (3) an act or acts done in furtherance of the common design." *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, No. C-14-03236-RMW, 2015 WL 3488923, at *3 (N.D. Cal. June 2, 2015). "To allege the formation and operation of the conspiracy, plaintiff must allege, at a minimum, an agreement to commit the wrongful acts." *Cisco Sys.* at *3 (citing *Wasco Products, Inc. v. Southwall Tech., Inc.*, 435 F.3d 989,

992 (9th Cir.2006)). "The plaintiff must [also] show that each member of the conspiracy came to the agreement." *Lachapelle v. Kim*, No. 15-CV-02195-JSC, 2015 WL 5461542, at *7 (N.D. Cal. Sept. 16, 2015). While "[t]he conspiracy 'may be inferred from the nature of the acts done, the relations of the parties, and the interests of the alleged conspirators, and other circumstances,'…when a plaintiff alleges that a defendant is liable for a fraud-based claim under a conspiracy theory, Rule 9(b) requires the plaintiff to allege with particularity facts that support the existence of the conspiracy." *Id.* (citing *Cisco Sys., Inc. v. STMicroelecs., Inc.*, 77 F.Supp.3d 887, 894 (N.D. Cal. 2014)).

Plaintiffs fail to adequately plead a conspiracy. The Complaint fails to allege, expressly or inferentially, any agreement to commit any wrongful act, and therefore Plaintiffs do not sufficiently allege "formation and operation of the conspiracy." Because Plaintiffs do not sufficiently allege any agreement, Plaintiffs also fail to allege any acts "done in furtherance of" the conspiracy, or any damage resulting from it.

### 1.    The Complaint fails to allege any agreement to do an unlawful act

"First, with respect to the formation and operation of a conspiracy, a plaintiff must allege knowledge of the wrongful activity, agreement to join in the wrongful activity, and intent to aid in the wrongful activity." *Lachapelle*, 2015 WL 5461542, at *7. "[B]are allegations and rank conjecture do not suffice[.]" *Id.* The Complaint, however, **nowhere** alleges that ExThera and the other Defendants agreed to do anything.[3] Without any allegation that Defendants entered into an agreement to join in wrongful activity, there can be no civil conspiracy. *See, e.g.*, *Cisco Sys.*, 77 F. Supp. 3d at 894 ("The FAC fails to allege sufficient facts that show an agreement between ST Mirco U.S. and other subsidiaries…Cisco alleges that the members of the 'core team' were represented as knowledgeable sources of information and would assist Cisco with the set top failures, but does not allege that the employees entered into an agreement and planned to provide Cisco with inaccurate information.").

---

[3] To the extent Plaintiffs' allegation that ExThera and the other Defendants "partnered" for the purpose of establishing a clinic in Antigua is considered to be an agreement (Dkt. 1, ¶ 231), it is not an agreement to perform an unlawful act, and therefore does not help to establish a conspiracy.

2. A conspiracy cannot be inferred from the Complaint

Having failed to expressly allege any agreement to commit an unlawful act, Plaintiffs must rely on the Court inferring such an agreement from the allegations in the Complaint. While a conspiracy "may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances," *Bartley v. California Ass'n of Realtors*, 115 Cal.App.3d 930, 934 (1980), "a reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work," *Wilcox v. Superior Ct.*, 27 Cal.App.4th 809, 828 (1994). "There must be some evidence. Mere association does not make a conspiracy." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (1995). As a result, "[t]he plaintiff must show that each member of the conspiracy came to the agreement." *Lachapelle*, 2015 WL 5461542, at *7.

In the "Civil Conspiracy Allegations" section, Plaintiffs allege that "in December 2023, ExThera partnered with Alan Quasha and his investment firm, Quadrant Management, to establish a clinic in Antigua, outside the reach of U.S. regulators, to provide ONCObind to the lucrative cancer market and serve as a launch pad for a chain of clinics." Dkt. 1, ¶ 231. Plaintiffs further allege that "Defendants established Quadrant Clinical Care and recruited Mr. Quasha's daughter, Dr. Devon Quasha, to serve as the Medical Director" and "also selected Quadrant Management investment team member Tom Pontzius to be Quadrant Clinical Care's president and promote ONCObind to potential participants." *Id.* Plaintiffs then allege that "Mr. Preston, Dr. Quasha, Dr. Sanja Ilic (ExThera's former Chief Regulatory Officer and Vice President for Clinical, Regulatory, and Medical Affairs), and Mr. Pontzius" made various misrepresentations to Plaintiffs to recruit participants to travel to Antigua to undergo ONCObind. *Id.*

Plaintiffs may argue that, based on these allegations, it can be inferred that Defendants agreed to commit fraud by making the various misrepresentations. That simply is a bridge too far. First, there is no allegation that these purported misrepresentations were part of a concerted joint effort. Second, Plaintiffs conspicuously allege that the acts described above as part of the conspiracy were performed by *all* Defendants, whereas Plaintiffs plead elsewhere in the Complaint that these same acts were performed *by Alan Quasha alone*. For example, the Complaint alleges:

1
2
3
4
5
6

> "Within ten days, **Mr. Quasha**, through Quadrant Management, invested $3 million in ExThera. By the end of 2023, **he** had formed a subsidiary, Quadrant Clinical Care, to market and administer the procedure in a clinic on the island of Antigua. The location was presumably chosen because use of the filters for cancer was not authorized in the United States. **Mr. Quasha** chose his daughter, Dr. Devon Quasha,…to serve as the clinic's medical director and chose another investment advisor [Pontius] employed by his private equity firm to serve as the clinic's president…The goal was to establish the first in what **Quasha** imagined would be a lucrative chain of clinics providing the ONCObind procedure in the Caribbean…"

7
8
9
10
11
12
13
14

Dkt. 1, ¶ 6. Those allegations contradict Plaintiffs' contention that all Defendants, including ExThera, agreed to and did perform the acts alleged in Paragraph 231 regarding the conspiracy. The "Civil Conspiracy Allegations" further allege that "John Preston, then both a member of ExThera's Board of Directors and an investment team member at Quadrant Management, served as a conduit between Mr. Quasha, Quadrant Management, and ExThera." *Id.*, ¶ 231. The Complaint, however, contains no factual allegations that plausibly infer that any alleged "conduit" function performed by Mr. Preston played any role at all in *any agreement*, let alone an agreement to perform an unlawful act.

15
16
17
18
19
20
21
22
23
24

Accordingly, in addition to being facially insufficient, because Plaintiffs' allegations related to its "Civil Conspiracy Allegations" are inconsistent with allegations made elsewhere in the Complaint, the Court cannot infer any conspiracy. *See Martinez v. Allstar Financial Servs., Inc.*, No. CV 14–04661 MMM (MRWx), 2014 WL 12597333, at *8 (C.D. Cal. Oct. 9, 2014) (finding plaintiff failed to plausibly allege TILA claim where "allegations concerning their entry into a consumer credit transaction with Allstar are plainly inconsistent with those found elsewhere in their complaint"); *Snyder v. Stanislaus Cnty.*, No. 1:19-cv-00679-DAD-EPG, 2021 WL 2210729, at *5 (E.D. Cal. June 1, 2021) ("Here, plaintiff's complaint does include a general allegation that plaintiff performed all required obligations, but those general allegations are 'rendered defective' by contradictory allegations elsewhere in the complaint.").

25
26
27
28

But even if a conspiracy to commit fraud could otherwise be inferred by the allegations in the Complaint, the conspiracy allegations should still be dismissed because Plaintiffs' allegations are improperly general and vague as directed to all "Defendants." "Rule 9(b) imposes heightened pleading requirements where 'the object of the conspiracy is fraudulent.'" *Swartz v. KPMG LLP*,

476 F.3d 756, 765 (9th Cir. 2007). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-765. Thus, even assuming the Court could infer that the object of the conspiracy was fraud, the Complaint does not specifically allege what ExThera's role was in the purported conspiracy, much less any allegation that ExThera agreed to commit fraudulent acts.

For example, the "Civil Conspiracy Allegations" allege that "[a]ll Defendants knew that ONCObind had not cured individuals of cancer in a Croatian trial conducted in fall 2023 or had no reason to believe that claims about this trial's success were true." Dkt. 1, ¶ 231. Plaintiffs, however, allege no facts in the Complaint to support this allegation. Plaintiffs also allege that "ExThera partnered with Alan Quasha and his investment firm, Quadrant Management, to establish a clinic in Antigua," (*id.*), but again, Plaintiffs do not allege any facts of this alleged "partnership" or that ExThera was at all involved with establishing the clinic in Antigua. Plaintiffs also conclude, again without any alleged facts in support, that "Defendants knew they were actually recruiting individuals for what amounted to human experimentation." *Id.*, ¶ 233. These allegations are simply "speculation," "conjecture" and "guess work," on which a "reasonable inference may not be based." *Wilcox*, 27 Cal.App.4th at 828.

Plaintiffs' conspiracy allegations are similar to those in *Lachapelle v. Kim*, where the court found that "[t]here are no facts in the complaint from which the Court can draw a reasonable inference that all defendants had knowledge of and agreed to the alleged fraud." 2015 WL 5461542, at *7. In *Lachapelle* the plaintiff alleged "a conspiracy to defraud," but the court found that "elements of the formation and operation of a conspiracy [were] lacking" because "[t]he complaint does not provide a time-frame for when defendants entered the agreement, describe how defendants came to reach such agreement, or indicate that each defendant had knowledge of the wrongful act and intent to aid in it, so the elements of the formation and operation of a conspiracy are lacking." *Id.* Here, Plaintiffs do not even allege an agreement to commit fraud, and certainly do not allege any "timeframe" for any such agreement or describe how each defendant came to reach any such agreement.

1    Similarly, in *Daniels v. Select Portfolio Servicing, Inc.*, the court held that the conspiracy

2    allegations were conclusory where the complaint alleged that the defendants "agreed to deceive

3    [plaintiffs] into participating in the loan modification processes," but pled "no factual allegations

4    about the nature of that agreement." 246 Cal.App.4th 1150, 1173 (2016). As in *Daniels*, Plaintiffs

5    plead no factual allegations about the nature of any agreement to commit fraud. In fact, like the

6    plaintiffs in *Daniels*, Plaintiffs do not plead any facts that Defendants agreed to commit fraud **before**

7    the alleged misrepresentations were made. *Id.* ("Critically, appellants do not allege that respondents

8    agreed to defraud them *before* the alleged misrepresentations were made (between 2009 and June

9    2012).") (emphasis original).

10    For all these reasons, the Complaint fails to plead any conspiracy, and ExThera cannot be

11    liable for the conduct of the other Defendants. As a result, because Plaintiffs seek to hold ExThera

12    secondarily liable for fraud, negligence, intentional infliction of emotional distress, negligent

13    infliction of emotional distress, battery, and wrongful death based on its alleged participation in a

14    "conspiracy," those claims must be dismissed.

15    **B.    The Complaint Fails to Plead Fraud at least as to ExThera (Claim 1)**

16    Moreover, the Complaint fails to adequately plead fraud as to ExThera. Fraud "requires the

17    plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent

18    to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d)

19    resulting damages." *Green v. Cent.* Mortg. Co., 148 F. Supp. 3d 852, 880 (N.D. Cal. 2015). "Rule

20    9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged

21    fraud 'be specific enough to give defendants notice of the particular misconduct…so that they can

22    defend against the charge and not just deny that they have done anything wrong. Averments of fraud

23    must [therefore] be accompanied by 'the who, what, when, where, and how' of the misconduct

24    charged." *Vess*, 317 F.3d at 1106. "The plaintiff must [also] set forth what is false or misleading

25    about a statement and why it is false." *Id.* The Complaint's fraud allegations fail for several reasons.

26    1.    Without a conspiracy, ExThera cannot be liable for statements made by other
Defendants

27

28    As an initial matter, because the Complaint fails to plead conspiracy (*supra*, III.A), ExThera

1    cannot be liable for any alleged fraudulent statements made by Mr. Quasha, Dr. Devon Quasha, Mr.

2    Preston, or any other employee or agent of QCC. *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n,*

3    620 F.2d 1360, 1367 (9th Cir. 1980) (coconspirators liable for acts of others done in furtherance of

4    conspiracy).

5                   2.    <u>ExThera cannot be held liable for statements made by a former board member</u>

6          ExThera is also not liable for any alleged false statements by Mr. Preston, who is alleged to

7    be a former member of ExThera's Board of Directors. Dkt. 1, ¶ 24. ExThera is "a Delaware

8    corporation." *Id.*, ¶ 19. Under Delaware law, "[d]irectors, in the ordinary course of their service as

9    directors, do not act as agents of the corporation[.]" *Arnold v. Society for Sav. Bancorp, Inc.*, 678

10   A.2d 533, 539-40 (Del. 1996); *see also Restatement (Second) Agency*, § 14C (1958) ("Neither the

11   board of directors nor an individual director of a business is, as such, an agent of the corporation or

12   its members."). Of course, "[t]his does not preclude an individual (whether an officer or not) who

13   also happens to serve on the board of directors from acting as an agent of the corporation pursuant

14   to express or implied authority granted by the board or imposed by law." *Arnold*, 678 A.2d at 540

15   n.15. The Complaint, however, contains no factual allegations that Mr. Preston made any alleged

16   false statements pursuant to any authority granted by ExThera's Board. Therefore, ExThera is not

17   liable for any alleged statements made by Mr. Preston.

18                  3.    <u>The Complaint fails to particularly plead fraud as to any Defendant</u>

19         The fraud claim against ExThera should also be dismissed for failing to satisfy Rule 9(b).

20   Rule 9(b) bars Plaintiffs from "merely lump[ing] multiple defendants together" for purposes of

21   fraud, *Swartz*, 476 F.3d at 764, and yet that is exactly what Plaintiffs do here. Rather than

22   "differentiate their allegations" among the various defendants and "inform **each** defendant

23   ***separately*** of the allegations surrounding his alleged participation in the fraud," *id.* at 764-65, the

24   Complaint "is shot through with general allegations that the 'defendants' engaged in fraudulent

25   conduct" and fails to "attribute[] specific misconduct" to any particular Defendant, including

26   ExThera, *id. See, e.g.*, Dkt. 1, ¶¶ 3, 7, 33, 44, 231, 232, 238.

27         Specifically, Plaintiffs plead their fraud claim at Paragraphs 235 to 243 of the Complaint.

28   Rather than plead fraud with particularity—which requires Plaintiffs to identify per Defendant,

including ExThera, what specific statement was made, who made the statement, when the statement was made, how the statement was communicated, to whom the statement was made, and why the statement was false, *Vess*, 317 F.3d at 1106—Plaintiffs instead include a chart at Paragraph 238 that lists nine categories of claims that generalized "Defendants" purportedly made to Plaintiffs. Dkt. 1, ¶ 238. That chart includes summaries—in Plaintiffs' own words—of alleged categories of misstatements, unattributed to any specific Defendant and unsupported by any specific allegation as to time, place, or manner of the statement that could satisfy Rule 9(b). For illustrative purposes, the first row in the chart is reproduced below:

| | *Defendants' Claim* | *Reality* |
|---|---|---|
| i. *Croatian study* | The ONCObind procedure reduced primary tumor size by a minimum of 49% in a recent trial and, in multiple participants, rendered their cancers undetectable. In other words, ONCObind offered a cure for cancer. | No data has been published corroborating that the Croatian study reduced participants' primary tumor sizes or rendered cancer undetectable. |

As shown above (and as similarly reflected in the other eight categories of claims, Dkt. 1, ¶ 238(ii)-(xi)), Plaintiffs fail to identify whether anyone at ExThera made that statement above, when the statement was made, to whom, and how the statement was communicated. That is insufficient to plead fraud under Rule 9(b). *See, e.g.*, *Puri v. Khalsa*, 674 F. App'x 679, 688, n.3 (9th Cir. 2017) ("The chart the plaintiffs included in ¶ 29 of the complaint does not supply all of the requisite details" for fraud.).

In addition, even if "other portions of the complaint allege details" of purported false statements, if "the portion of the complaint dealing explicitly with the fraud claim" fails to "cross reference these earlier allegations in any intelligible manner […] [then] vague references to these details, using language such as 'alleged above' are ***insufficient*** in a case such as this, involving a lengthy and difficult to decipher pleading." *Id.* at 688. Here, Plaintiffs chose to "incorporate [in their fraud claim] the substantive allegations contained in all prior and succeeding paragraphs as if fully set forth herein." Dkt. 1, ¶ 235. However, that is insufficient to allege fraud as to ExThera with the required particularity when the remainder of the Complaint is 275 paragraphs and the fraud claim fails to cross-reference a single other paragraph. Again, ExThera is left to guess where in the bulky

Complaint it is to find the specific allegations of fraud asserted against it. The mere fact that the Complaint alleges conspiracy "do[es] not excuse the plaintiffs from offering detailed and particularized allegations regarding each defendant's role in the fraud." *Puri*, 674 F. App'x at 687. Accordingly, the fraud claim should be dismissed because it "does not attribute specific conduct to individual defendants," including ExThera, and fails to "identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Swartz*, 476 F.3d at 765 ("Swartz failed to sufficiently detail the roles play by the defendants in the alleged conspiracy to defraud").

### 4.    The Complaint fails to sufficiently plead ExThera's knowledge of falsity

Plaintiffs also fail to sufficiently plead facts that anyone at ExThera made a "knowingly false representation." *Green*, 148 F. Supp. 3d at 880. Plaintiffs make generalized allegations in Paragraph 237 about "Defendants'" knowledge regarding the efficacy of the ONCObind treatment without making any specific allegations as to **ExThera's** knowledge. Plaintiffs generally allege that "Defendants knew the potential to cure cancer via blood filtration was extremely speculative," that "Defendants knew that ONCObind had not cured patients of cancer in a Croatian trial conducted in fall 2023 or had no reason to believe that claims about this trial's success were true," and that "any conclusion of efficacy could not be drawn by early 2024 when Defendants marketed ONCObind to Plaintiffs." Dkt. 1, ¶ 237. The Complaint, however, fails to specifically allege any facts that any agent of ExThera knew that any purported statements made to Plaintiffs was false. Accordingly, Plaintiffs' fraud claim should also be dismissed for failure to sufficiently plead scienter at least as to ExThera. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ("nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to 'set forth facts from which an inference of scienter could be drawn.'").

### 5.    The fraud claim contradicts other allegations in the Complaint

Plaintiffs' fraud claim is also inconsistent with other claims in the Complaint. For example, in the seventh category of fraud claims, Plaintiffs allege that "Defendants" claimed that "[t]he Antigua clinic is fully equipped to treat individuals suffering from late-stage cancer, both in terms of facilities and medical personnel." Dkt. 1, ¶ 238(vii). Plaintiffs allege this is false because "[t]he

Antigua clinic was not equipped to treat individual[s] suffering from late-stage cancer—no oncologist was on staff (nor even was a physician present at all for long stretches of time); the clinic had only two sinks, no available hospital beds, no CT scanner, limited pain medication, and poor hygiene/sanitation practices." *Id.* Aside from the fact that there are no allegations that ***any*** Defendant made any such statement, the Complaint's own documentation rebuts Plaintiffs' contention. Plaintiffs claim that the clinic had no hospital beds, and yet the Complaint includes photos of patients at the Antigua clinic in hospital beds surrounded by medical equipment. *See, e.g.*, Dkt. No. 1, pp. 11, 18, 23.

Similarly, Plaintiffs allege that "Defendants" falsely claimed that "[c]linical trials of ONCObind will begin in the United States soon, and individuals who receive ONCObind in Antigua will be able to enroll in these U.S.-based trials and receive no-cost filtrations going forward." Dkt. 1, ¶ 238(viii). Plaintiffs allege this statement was false, and yet admit elsewhere in the Complaint that ExThera did ultimately carry out a clinical trial in the United States. *Id.*, ¶ 32.

Plaintiffs likewise make a contradictory assertion with respect to the ninth category of false claims. There, Plaintiffs allege that "Defendants" generally claimed that "[a]ny negative test results or adverse events are proof that ONCObind is working and that further filtrations are needed." Dkt. 1, ¶ 238(ix). Plaintiffs allege this claim was false because "Plaintiff participants' negative test results and adverse events were confirmation that ONCObind was harming them, in some cases leading to death." *Id.* But Plaintiffs allege that Mr. Bowen's "sudden decline" was due to several potential causes:

> "Mr. Bowen's labs demonstrated a ***number of potential causes for his sudden decline***: his uric acid levels were again extremely high, he had a blood clot in his iliac vein (where the catheter for filtration had been inserted) that was likely aggravated by the travel, and he might have tumor lysis syndrome. The medical team informed Ms. Bowen that blood clots are a common adverse effect of the type of catheter Dr. John placed in Mr. Bowen in Antigua. None of these issues had been caught in the Antigua clinic, where there was no physician oversight during the week Mr. Bowen was receiving ONCObind."

*Id.*, ¶¶ 150-151. Significantly, Plaintiffs do not allege that any of these "potential causes" was due to the use of the Seraph 100, or any foreseeable risk that ExThera knew about but failed to disclose to Plaintiffs.

1    Accordingly, Plaintiffs' contradictory allegations render its fraud claim defective. *Snyder*,

2    2021 WL 2210729, at *5 ("Here, plaintiff's complaint does include a general allegation that plaintiff

3    performed all required obligations, but those general allegations are 'rendered defective' by

4    contradictory allegations elsewhere in the complaint.")

5    **C.    The Complaint Fails to Plead Negligence and NIED at least as to ExThera (Claims 2 and 4)**

6

7    Plaintiffs fail to sufficiently plead negligence or negligent infliction of emotional distress

8    (NIED) as to ExThera. To state a claim for negligence, Plaintiffs must allege "(1) the defendant has

9    a legal duty to use due care; (2) the defendant breached such legal duty; (3) the defendant's breach

10    was the proximate or legal cause of the resulting injury; and (4) damage to the plaintiff." *Duste v.*

11    *Chevron Prods. Co.*, 738 F. Supp. 2d 1027, 1037 (N.D. Cal. 2010). In California, NIED "is a form

12    of the tort of negligence, to which the elements of duty, breach of duty, causation and damages

13    apply." *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1275 (E.D. Cal. 2012). As

14    such, "[t]here is no separate cause of action for negligent infliction of emotional distress; rather,

15    emotional distress is an element of damages." *Boessenecker v. JPMorgan Chase Bank*, No. 13–0491

16    C MMC, 2014 WL 107063, at *2 (N.D. Cal. Jan. 10, 2014). For the reasons below, Plaintiffs' claims

17    for negligence and NIED should be dismissed.

18    1.    The Complaint fails to sufficiently plead negligence (Claim 2)

19    Evaluating Plaintiffs' negligence claim, paragraph by paragraph, Plaintiffs fail to sufficiently

20    plead negligence at least against ExThera.

21    First, Plaintiffs fail to adequately plead that ExThera owed more than an ordinary duty of

22    care. Plaintiffs allege in Paragraph 245 that "Defendants had a duty of care not to engage in

23    affirmative misconduct or cause foreseeable harm to Plaintiffs." Dkt. 1, ¶ 245. If this supposed duty

24    "not to engage in affirmative misconduct" was actually owed, then taken to its logical extreme, this

25    would create a negligence cause of action for ***any*** tort committed, as no one is allowed to engage in

26    "affirmative misconduct." That cannot be right. Plaintiffs further allege that "Defendants owed a

27    duty of care to Plaintiffs, which here meant not engaging in conduct that would put Plaintiff

28    participants at risk of increased pain and accelerated cancer or would cause Plaintiff spouses

emotional distress." *Id.* This does not explain what the alleged duty was, but instead offers conclusory language about what a breach of the unidentified duty might look like. Plaintiffs allege no other duty of care in their negligence claim, and do not explain how ExThera breached an ordinary duty of care. *Id.*, ¶¶ 244-247. Because Plaintiffs do not allege ExThera owed a special duty of care to any specific Plaintiff, or breached the ordinary duty of care, the negligence claim fails as a matter of law.

Paragraph 246 of the negligence cause of action suffers from similar infirmities. Plaintiffs allege that "Defendants breached their duty of care by recklessly encouraging Plaintiff participants to discontinue or fail to begin evidence-based chemotherapy and/or radiation treatment." *Id.*, ¶ 246. But to the extent Plaintiffs are attempting to plead medical negligence, such claim fails as to ExThera. Under California law, duties related to medical advice only apply to health care providers: "[n]egligent failure [by a physician] to advise a patient to pursue a potentially necessary course of treatment is actionable under ordinary medical negligence standards..." *Jamison v. Lindsay*, 108 Cal. App. 3d 223, 231 (1980). Plaintiffs do not allege that ExThera is a medical practice of physicians (indeed, they admit ExThera is a "medical device company" that "manufacturers the Seraph 100 blood filter" (Dkt. 1, ¶¶ 19, 265, 4)), nor do they allege anywhere in the Complaint that ExThera treated patients. Without alleging those types of facts, Plaintiffs cannot impose medical negligence standards on ExThera. Plaintiffs also allege that ExThera and the other Defendants committed negligence "by luring Plaintiffs to the island of Antigua with the false promise of future, no-cost access to medical trials within the United States" and by "failing to provide a clinical facility equipped for severely ill individuals." *Id.*, ¶ 246. Those allegations, however, are merely the fraud claim dressed up as negligence, and accordingly fail for all the reasons stated above.

Moreover, Plaintiffs fail to sufficiently allege that ExThera, as opposed to other Defendants, did anything that breached a duty of care owed to Plaintiffs. The Complaint is conclusory and inconsistent with other allegations that allege that ***other*** Defendants engaged in acts that harmed Plaintiffs. For example, Plaintiffs allege that all Defendants "engag[ed] in what amounted to an unregistered, unmonitored blood filtering experiment in Antigua." *Id.*, ¶ 246. Plaintiffs do not allege that ExThera (separate from the alleged conspiracy, which fails for the reasons stated above)

1  operated the alleged "unregistered experiment" or had any control over QCC, who is alleged to have

2  administered the ONCObind treatment on Plaintiffs. *Id.*; *see also id.*, ¶¶ 13-18. Nor did Plaintiffs

3  allege that QCC lacked regulatory approval in Antigua—just the opposite. Plaintiffs aver in their

4  Complaint that Antigua may have been selected because it was "where [Defendants] could easily

5  obtain approval to deploy ONCObind." *Id.*, ¶ 37.

6    Even if the Complaint sufficiently alleged a duty of care, the Complaint does not allege how

7  ExThera would have breached this duty, or allege specific damages caused by ExThera, as opposed

8  to conduct by unidentified "Defendants." Instead, the Complaint alleges in conclusory fashion in a

9  single sentence that "[a]s a proximate cause of Defendants' negligent or reckless acts, Plaintiffs

10 suffered damages, including, but not limited to, economic and non-economic damages, including

11 severe emotional distress." *Id.*, ¶ 247. That is insufficient to plausibly plead negligence. *See, e.g.*, *In

12 re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 963 (S.D. Cal.

13 2014) (dismissing negligence claims where "Plaintiffs' allegations of causation and harm are wholly

14 conclusory, and therefore fail to put the Court or Sony on notice of the specific relief requested.");

15 *Iqbal*, 556 U.S. at 663 ("A claim has facial plausibility [under Rule 8] when the pleaded factual

16 content allows the court to draw the reasonable inference that the defendant is liable for the

17 misconduct alleged.").

18    2.    The Complaint fails to sufficiently plead NIED at to ExThera (Claim 4)

19    Plaintiffs' NIED claim should also be dismissed. As an initial matter, it is not a separate

20 cause of action under California law. *Boessenecker*, 2014 WL 107063, at *2; *Wong v. Tai Jing*, 189

21 Cal.App.4th 1354, 1377 (2010) (holding "claim of negligent infliction of emotional distress is not

22 an independent tort but the tort of negligence to which the traditional elements of duty, breach of

23 duty, causation, and damages apply"). Nor can a claim for NIED be brought by Plaintiffs Estate of

24 David Hudlow, Estate of John Bowen, and Estate of Kyle Chupp because "emotional distress

25 damages do not survive the death of the person who suffered them." *Copeland v. County of Alameda*,

26 No. 12–cv–04286–JST, 2014 WL 1266198, *3 (N.D. Cal. Mar. 21, 2014); *see also Martin v. Cal.

27 Dep't of Veterans Affairs*, 560 F.3d 1042, 1050-51 (9th Cir.2009) ("[U]nder California law, the

28 Estate's tort claims for emotional distress did not survive the death of [the plaintiff].").

1    But even if Plaintiffs could be plead NIED as a standalone cause of action, the NIED claim

2    otherwise fails to sufficiently state a claim for relief. In California there are two types of NIED

3    claims: bystander claims and direct victim claims. *McKenna*, 894 F. Supp. 2d at 1275. Plaintiffs

4    allege both. Dkt. 1, ¶¶ 253-257. "'Bystander claims' are typically based on breach of a duty owed

5    to the public in general, whereas a right to recover for emotional distress as a 'direct victim' arises

6    from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter

7    of law, or that arises out of the defendant's preexisting relationship with the plaintiff." *McKenna.*,

8    894 F. Supp. 2d at 1275.

9    For the "direct victim" claims, Plaintiffs try to create a legal duty where none exists by

10    claiming that "[b]y and through their actions, Defendants ExThera Medical, Quadrant Clinical Care,

11    and Dr. Devon Quasha acted as healthcare providers, under the direction of all members of the civil

12    conspiracy described above. As healthcare providers, these Defendants took on a duty of care to

13    avoid emotional distress that may result from negligent care." Dkt. 1, ¶ 254. But this is the ***only***

14    place in the Complaint where Plaintiffs allege that ExThera is a "healthcare provider," and in

15    ***multiple other*** places Plaintiffs allege, accurately, that ExThera is instead "a medical device

16    manufacturer." *See, e.g.*, *id.,* ¶¶ 4, 19, 265, 269; *Snyder*, 2021 WL 2210729, at *5 ("Here, plaintiff's

17    complaint does include a general allegation that plaintiff performed all required obligations, but

18    those general allegations are 'rendered defective' by contradictory allegations elsewhere in the

19    complaint."). In fact, Plaintiffs consistently plead in their Complaint that QCC and its clinical staff—

20    not ExThera—administered the ONCObind procedure on Plaintiffs. Dkt. 1, ¶¶ 13-18, 21, 36, 63, 66,

21    68, 71, 78, 93, 110, 113, 133, 170, 173, 177, 205, 207, 219. Absent the baseless pretext that a medical

22    device manufacturer is a healthcare provider, there is no basis to claim ExThera assumed "a legal

23    duty to plaintiff in which the emotional condition of the plaintiff is an object." *McKenna*, 894 F.

24    Supp. 2d at 1275. Because ExThera owed Plaintiffs no duty of care, there is no direct NIED liability

25    as to ExThera.

26    The bystander claim also fails because Plaintiffs do not allege that ExThera breached any

27    duty to the non-patient spouses of those receiving the ONCObind treatment. Plaintiffs' allegations

28    all involve acts allegedly taken by ***Mr. Quasha or QCC***, not ExThera. For example, in the NIED

claim Plaintiffs alleged: "establishing a substandard clinic in Antigua;" "offering medical care to individuals suffering from late-stage cancer with knowledge that such care would likely not be sufficient even to keep them medically stable;" and "repeatedly administering ineffective and painful treatments." Dkt. 1, ¶¶ 255-256. Elsewhere in the Complaint, Plaintiffs allege these acts were performed by Mr. Quasha or QCC: Mr. Quasha "formed a subsidiary, Quadrant Clinical Care" (*id.*, ¶ 6); the blood filter treatment was "administered by Quadrant Clinical Care" (*id.*, ¶¶ 13-18); and Mr. Hudlow (*id.*, ¶¶ 65-76; 90-97), Mr. Withey (*id.*, ¶¶ 111-117) Mr. Bowen (*id.*, 137-148), Mr. Chupp (*id.*, 169-178), Mr. Salgado (*id.*, 205-209), and Ms. Peri (*id.*, 220-222) were all treated by QCC staff at the QCC clinic in Antigua.

Further, even if Plaintiffs plausibly alleged that ExThera owed a duty of care to Plaintiffs and breached that duty (which it did not), they fail to demonstrate any damage caused by ExThera. Nowhere do Plaintiffs allege that the ExThera Seraph 100 filters caused any harm themselves. Plaintiffs do not even allege that the filters failed to work as intended. Instead, the Complaint alleges that the alleged incompetence or absence of QCC staff, Dr. John, or Dr. Quasha caused Plaintiffs' physical injuries and thus any resultant emotional injuries (*see, e.g., id.*, ¶¶ 11, 39, 40, 46, 71, 73-78, 88, 90, 93, 94, 96, 110, 112-116, 137-141, 145-148, 176, 205, 207, 208, 210, 220-223). Plaintiffs' bystander and direct NIED claims must be dismissed as to ExThera for this reason as well.

### D.    The Complaint Fails to Plead IIED at least as to ExThera (Claim 3)

Plaintiffs fail to plead that ExThera or any other Defendant committed intentional infliction of emotional distress (IIED). To allege IIED under California law, "a plaintiff must show '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1016 (N.D. Cal. 2014). To be "outrageous," conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community[, and the] defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result." *Id.*

1    First, Plaintiffs Estate of David Hudlow, Estate of John Bowen, and Estate of Kyle Chupp

2    cannot assert a claim for IIED because "emotional distress damages do not survive the death of the

3    person who suffered them." *Copeland*, 2014 WL 1266198, *3; *Martin*, 560 F.3d at 1050-51.

4        Further, the Complaint fails to allege that ExThera committed IIED. The Complaint

5    concludes that "Defendants engaged in extreme and outrageous conduct" by performing various

6    acts (Dkt. 1, ¶ 249), but does not plead facts that show ***how*** these alleged acts meet "the high bar of

7    extreme and outrageous conduct needed to establish a claim for [IIED]," where the "essential

8    element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency."

9    *Harrell v. California State Univ.*, 745 F. Supp. 3d 922, 945 (N.D. Cal. 2024). "In order to avoid a

10   [motion to dismiss], the plaintiff must allege with '***great[ ] specificity'*** the acts which he or she

11   believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community."

12   *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 160-61 (2014). Plaintiffs fail to meet that

13   high bar. In fact, the types of outrageous conduct that ExThera purportedly engaged in all sound in

14   fraud: "misleading," "misrepresenting," "luring," and "falsely assuring." Dkt. 1, ¶ 249. Where, as

15   here, a claim is "grounded in fraud," the plaintiff must satisfy the heightened pleading requirements

16   of Rule 9(b). *Hawkins v. Shimano N. Am. Bicycle, Inc.*, 729 F. Supp. 3d 989, 1013 (C.D. Cal. 2024).

17   For all the reasons above, Plaintiffs have failed to sufficiently allege that ExThera committed fraud.

18       Further, Plaintiffs do not clearly allege that they suffered any emotional distress as a result

19   of the alleged acts. They claim that "[w]hile emotional distress is common during cancer treatment,

20   the severe emotional distress Plaintiffs suffered as the result of Defendants' misconduct is of a

21   different nature. The emotional distress here stemmed not only from the disease's toll, but from the

22   deceit perpetuated by individuals who held themselves out as scientific experts offering a cutting-

23   edge cure for cancer that was in fact a dangerous medical experiment aimed at launching a

24   commercial enterprise." Dkt. 1, ¶ 252. Again, this claim reads like a rehashed fraud claim, but fails

25   to specify the type and nature of the severe emotional distress. Plaintiffs must "allege facts showing

26   [their] severe mental or emotional distress;" "conclusory allegation[s] that [they] suffered emotional

27   distress [are] insufficient." *Steshenko*, 70 F. Supp. at 1016.

28       For these reasons, the IIED claim should be dismissed at least as to ExThera.

**E.**    <u>The Complaint Fails to Plead Battery as to ExThera (Claim 5)</u>

Plaintiffs' battery claim against ExThera should also be dismissed. "Under California civil law, the elements of a battery are as follows: (1) defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 748 (E.D. Cal. 2008). Because Plaintiffs' battery allegations all relate to the treatment received in Antigua (Dkt. 1, ¶¶ 258-263), Plaintiffs must also meet California's specific requirements for medical battery. *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 760-61 (N.D. Cal. 2024).

California recognizes "'two qualitatively different types' of medical battery"—essentially, that is, battery without consent and battery with consent. *Burchell v. Faculty Physicians & Surgeons of Loma Linda Univ. Sch. of Med.*, 54 Cal.App.5th 515, 523-24 (2020). Battery without consent "occurs when a physician obtains the patient's consent to perform one type of treatment, but performs a substantially different treatment for which the plaintiff gave no consent." *Id.* at 524. On the other hand, battery with consent "occurs when a physician performs the treatment for which consent was obtained and an infrequent complication occurs that the physician failed to disclose when obtaining the patient's consent." *Id.* That type of medical battery is "based on professional negligence, not intentional misconduct, because the physician did not deliberately deviate from the consent, but merely failed to disclose all known potential complications." *Id.*

It is not clear which type of medical battery Plaintiffs allege. Either way, no battery claim can stand against ExThera, as Plaintiffs do not allege that ExThera or its agents performed any medical procedures on any Plaintiff—i.e., they did not "touch" the Plaintiffs, which is required for battery. *Garcia*, 637 F. Supp. 2d at 748 (citing *Price v. County of San Diego*, 990 F. Supp. 1230, 1244 (S.D. Cal. 1998)). As discussed above (*supra*, III.C.2), the Complaint does not plead any facts to suggest that ExThera is a medical practice or hospital. Moreover, the Complaint does not allege that ExThera treated any of the Plaintiffs; instead, all treatments were alleged to have been administered by QCC clinical staff. Dkt. 1, ¶¶ 11, 39, 40, 46, 71, 73-78, 88, 90, 93, 94, 96, 110, 112-116, 137-141, 145-148, 176, 205, 207, 208, 210, 220-223. In fact, the Complaint blames QCC

1   clinical staff for several of the alleged injuries, not ExThera. *See, e.g.*, *id.*, ¶¶ 11-18, 63, 71, 91, 94,

2   113, 173, 207. Therefore, the battery claim must be dismissed as to ExThera.

3       **F.      The Complaint Fails to Plead Product Liability (Failure to Warn) (Claim 6)**

4           Plaintiff's sixth cause of action for product liability (failure to warn) should likewise be

5   dismissed. In California, a product liability claim based on a failure to warn requires Plaintiffs to

6   allege that "(1) the defendant manufactured, distributed, or sold the product; (2) the product had

7   potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3)

8   that the potential risks presented a substantial danger to users of the product; (4) that ordinary

9   consumers would not have recognized the potential risks; (5) that the defendant failed to adequately

10  warn of the potential risks; (6) that the plaintiff was harmed while using the product in a reasonably

11  foreseeable way; (7) and that the lack of sufficient warnings was a substantial factor in causing the

12  plaintiff's harm." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 750 (N.D. Cal. 2019).

13          First, Plaintiffs do not allege that ExThera's Seraph 100 filters were the cause of their

14  injuries; instead, they attribute their injuries to the alleged incompetence or absence of QCC staff,

15  Dr. John, or Dr. Quasha. *See, e.g.,* Dkt. 1, ¶¶ 11, 39, 40, 46, 71, 73-78, 88, 90, 93, 94, 96, 110, 112-

16  116, 137-141, 145-148, 176, 205, 207, 208, 210, 220-223). *See, e.g.*, *Ochoa v. City of Hayward*, No.

17  C-14-02385 DMR, 2014 WL 4088203, at *5 (N.D. Cal. Aug. 19, 2014) (dismissing claim where

18  complaint failed to allege causation because it failed to allege that the defendant engaged in any

19  conduct that caused the purported injuries).

20          Second, even if the alleged harm was attributable to ExThera's filters, California's doctrine

21  of the learned intermediary "holds that a manufacturer of […] medical devices satisfies its duty to

22  warn when it provides adequate warnings to the prescribing physician, as opposed to the patient."

23  *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 706-07 (E.D. Cal. 2019). The doctrine "covers failure

24  to warn claims under both the strict liability theory and the negligence theory." *Id.* Plaintiffs do not

25  allege that ExThera failed to train the QCC physicians. Just the opposite, in their Complaint,

26  Plaintiffs admit that ExThera sent employees to Antigua "ostensibly to train the local clinic's staff

27  on usage of the filter" and include a photograph that shows ExThera's staff (Dr. Ilic and Dr. Chawla)

28  training QCC clinical staff on the use of the filters. Dkt. 1, ¶ 38. Because Plaintiffs do not allege that

1  ExThera failed to provide adequate warnings to Plaintiffs' physicians, the failure to warn claim must

2  be dismissed.

### G.    The Complaint Fails to Plead Wrongful Death as to ExThera (Claim 7)

4    Plaintiffs' final cause of action for wrongful death also fails to state a claim as to ExThera.

5  To sufficiently plead wrongful death in California, plaintiffs must allege "(1) a wrongful act or

6  neglect that (2) causes (3) the death of another person." *Est. of Vela v. Cnty. of Monterey*, No. 16-

7  CV-02375-BLF, 2018 WL 4076317, at *13 (N.D. Cal. Aug. 27, 2018). "[T]he wrongful death claim

8  may be premised on "any kind of tortious act." *Id.*

9    As an initial matter, California law does not recognize a claim for wrongful death where the

10  decedent had a less than fifty percent chance of survival. "Where the alleged negligence relates to

11  the failure to diagnose and treat a potentially terminal condition, a plaintiff fails to satisfy the

12  requisite causation if the evidence shows the decedent did not have a greater than 50 percent chance

13  of survival had the defendant properly diagnosed and treated the condition." *Bromme v. Pavitt*, 5

14  Cal.App.4th 1487, 1494 (1992). Here, Plaintiffs allege that each of the decedents, Mr. Hudlow, Mr.

15  Bowen, and Mr. Chupp, had all been diagnosed with Stage IV cancer before traveling to Antigua to

16  receive the ONCObind treatment at the QCC clinic. Dkt. 1, ¶ 48 (alleging Mr. Hudlow had Stage

17  IV cancer as of February 2022), ¶ 60 (referencing Mr. Hudlow's "advanced stage" cancer); ¶¶ 126-

18  128 (alleging Mr. Bowen was diagnosed with Stage IV cancer in September 2022 and that by

19  February 2024, he was "nearly two years into fighting [his] cancer"); ¶ 154 (alleging that Mr. Chupp

20  was diagnosed with Stage IV cancer on December 29, 2023). In fact, there is not a single allegation

21  in the Complaint that plausibly suggests that any decedent was given a favorable prognosis prior to

22  receiving the ONCObind treatment in Antigua. Without any allegations demonstrating that the

23  decedents had a more than fifty percent chance of survival prior to the alleged tortious conduct,

24  there is no wrongful death claim.

25    Similarly, the Complaint fails to sufficiently plead causation. "To be a cause in fact, the

26  wrongful act must be 'a substantial factor in bringing about' the death." *Bromme*, 5 Cal.App.4th at

27  1498. Even if all facts alleged in the Complaint are true for purposes of a motion to dismiss, Plaintiffs

28  still fail to allege that ExThera committed "any kind of tortious act" that "cause[d] […] the death of

1    another person." *Est. of Vela*, 2018 WL 4076317, at *13. Plaintiffs do not allege anywhere in their

2    Complaint that the Seraph 100 filters themselves were the cause of any purported damages,

3    including the unfortunate deaths of Mr. Hudlow, Mr. Bowen, and Mr. Chupp. Instead, they point to

4    the alleged inaction, absence, or incompetence of QCC's clinic staff, Dr. Quasha, or Dr. John, none

5    of whom act on behalf of ExThera. *See* Dkt. 1, ¶¶ 11, 39, 40, 46, 71, 73-78, 88, 90, 93, 94, 96, 110,

6    112-116, 137-141, 145-148, 176, 205, 207, 208, 210, 220-223. Without any factual allegations

7    plausibly suggesting that ExThera engaged in any conduct that was a "substantial factor" in causing

8    Plaintiffs' deaths, there is no claim for wrongful death against ExThera.

9          But even if the Court were to find that the wrongful death claim is sufficiently pled, it is

10   otherwise duplicative of the negligence claim. Both causes of action are based on substantially the

11   same generalized allegations: Defendants established a clinic in Antigua, Defendants encouraged

12   Plaintiffs to travel to Antigua to receive the ONCObind treatment, and Defendants administered

13   ONCObind to Plaintiffs, resulting in their alleged injuries. *Compare* Dkt. 1, ¶ 246 *with id.*, ¶¶ 274-

14   275. Courts routinely dismiss claims where, as here, they are merely duplicative of other claims.

15   *Hall v. City of Walnut Creek*, No. C 19-05716 WHA, 2020 WL 408989, at *6 (N.D. Cal. Jan. 24,

16   2020) ("This order agrees with the defendants that it is enough to allege wrongful death based on

17   negligence and that the separate negligence claim is merely duplicative."); *Estate of Hatfield v.

18   County of Lake*, No. C 11-2396 PJH, 2012 WL 1949327 (N.D. Cal. May 29, 2012) (medical

19   negligence duplicative of wrongful death based on medical negligence); *Zion v. County of Orange*,

20   No. SACV 14-1134 JVS (RNBx), 2014 WL 12798107 (C.D. Cal. Nov. 17, 2014) (negligence

21   duplicative of wrongful death based on negligence); *Herrera v. Los Angeles Unified School District*,

22   No. SACV 17-00069 JVS (KESx), 2019 WL 1581413 (C.D. Cal. Feb. 13, 2019) (negligent

23   supervision duplicative of wrongful death) *A.C. v. Griego*, No. 2:16-cv-00746-JAM-CKD, 2016

24   WL 5930592 (E.D. Cal. Oct. 12, 2016) (plaintiffs withdrew negligence as duplicative of wrongful

25   death). Thus, for all these reasons, the Court should dismiss the wrongful death claim.

26        **H.     The Complaint Fails To Plead a Basis For Attorney's Fees**

27        "In a diversity action, the federal district court applies the substantive law of the forum state,

28   which in this instance is California." *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813,

824 (E.D. Cal. 2016). "In general, California law only allows a prevailing party to recover attorney's fees when a statute or an agreement of the parties provides for fee shifting." *Id*. In California, "[s]ome courts have stricken baseless prayers for attorney fees under Rule 12(f)." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Here, Plaintiffs identify no statutory basis for requesting an award of attorneys' fees; thus that prayer for relief requesting attorneys' fees should be struck pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## IV.    **CONCLUSION**

For all the reasons herein, the Court should dismiss the Complaint in its entirety and without leave to amend.

Dated:  May 9, 2025                    LARSON LLP


By:    _____/s/ Catherine S. Owens_____
           Stephen G. Larson
           Hilary Potashner
           Catherine S. Owens
           S. Gregory Herrman
           Karen E. Huber

           Attorneys for Defendant ExThera Medical Corporation